# DEBT ACKNOWLEDGMENT AGREEMENT

This Debt Acknowledgment Agreement (this "**Agreement**"), dated effective as of September 30, 2022 (the "**Effective Date**"), is entered into by and among Robert M. Koffler ("**RK**"), Maite, LLC, a Florida Limited Liability ("**Maite**" together with RK, the "**Debtors**"), and Tri-Cap Holdings, LLC, (the "Creditor"). Debtors and Creditor may hereinafter be referred to collectively as the "**Parties**" and individually as a "**Party**, with the appearance of 530 Mashta, LLC.

## RECITALS

**WHEREAS**, on August 15, 2019, Debtors, as "Pledgors," entered into an amended and restated security agreement with Creditor and 530 Mashta, LLC as "Secured Parties" (the "**Security Agreement**"), whereby the Debtors granted a security interest in: i) the membership interests in the companies set forth in Exhibit C of the Security Agreement (the "**Membership Interests**"), ii) the certificates, if any, representing the Membership Interests, iii) all rights, powers, privileges and preferences to the Membership Interests (as specified on Section 1(c) of the Security Agreement), and iv) all proceeds of the Membership Interests which shall include, without limitation, any sale proceeds, dividends, distributions or other amounts received in respect of such Membership Interests and property ("**Distributions**" and together with the Membership Interest, shall be referred to as the "**Collateral**"), in favor of the Secured Parties, in order to secure full payment and performance of the Secured Obligations (as such term is defined in Exhibit A of the Security Agreement);

**WHEREAS**, in connection with the Security Agreement, on May 25, 2020, the Pledgors and Secured Parties entered into a certain escrow agreement (the "**Escrow Agreement**") with JP Morgan Chase Bank, N.A., as the escrow agent (the "**Escrow Agent**"), in order for the parties to deposit to the Escrow Agreement any and all Distributions into an escrow account held by the Escrow Agent, in order to disburse the funds therein to pay the Secured Obligations as instructed by the relevant parties;

**WHEREAS**, in terms of Section 2 of the Security Agreement, the Parties agree that this Agreement and the Mashta Debt Acknowledgment (as such term is defined below), supersedes and replaces Exhibit A of the Security Agreement (the "**Original Exhibit A**"), and the amounts and/or transactions set forth in this Agreement, including the Debtor's Acquired Obligations (as such term is defined below) listed on Exhibit B, shall be considered the new Secured Obligations of the Security Agreement;

**WHEREAS**, given that 530 Mashta, LLC ("**530 Mashta**") is a secured party to the Security Agreement, 530 Mashta will as of this date, enter into with the Debtors certain debt acknowledgment agreement under the same terms and conditions as the ones here under (the "**Mashta Debt Acknowledgment**"), the parties hereby agree and acknowledge that the Mashta Debt Acknowledgment jointly with this Agreement, shall be considered as the new Secured Obligations of the Security

PLAINTIFFS001793

Agreement, and thus, both Debt Acknowledgments will replace and supersede the Original Exhibit A; and

**WHEREAS**, Debtors agree that nothing contained herein shall extinguish or operate to extinguish the indebtedness secured by the Security Agreement; provided, however, that this Agreement shall (i) amend the Security Agreement by replacing the Original Exhibit A therein with this Debt Acknowledgment Agreement and the Mashta Debt Acknowledgment, and (ii) amend the promissory notes, as applicable, executed by the Debtors in favor of the Creditors as they related to the Total Debt (as defined below) as set forth in Section 8 hereof.

## AGREEMENT

**THEREFORE**, in consideration of the foregoing, and of the mutual covenants and agreements set forth herein, the Parties agree as follows:

**1. Recitals.** The foregoing recitals are true and correct and incorporated herein by this reference.

**2. Total Debt.** Debtors hereby acknowledge and agree that they, jointly and severally, owe Tri-Cap the principal amount of USD$6,847,895.04 (six million eight hundred and fort seven thousand eight hundred and ninety five dollars 04/100) plus any accrued but unpaid interest thereon (the "**Total Debt**"), which is derived from several loans made by Creditor, in favor of the Debtors and its affiliates, as more fully described on **Exhibit "A"** attached hereto. As such, Debtors irrevocably and unconditionally agree to pay to Creditor the amount of the Total Debt in accordance with the terms set forth herein.

In addition to the foregoing, Debtors acknowledge and agree that Creditor, as of the date hereof, has made several loans to BiscayneAmericas Advisors, LLC a Florida limited liability company ("BAA") in the amount of USD$380,412.96 (three hundred eighty thousand four hundred and twelve dollars 96/100) (the "Tricap/BAA Debt") and to Lera Investment Technologies, LLC a Delaware limited liability company ("Lera") in the amount of USD$5,344,375.26 (five million three hundred forty-four thousand three hundred and seventy-five dollars 26/100) (the "Tricap/Lera Debt, together with the Tricap/BAA Debt shall be referred to as the "Tricap Debts") and 530 Mashta and/or its related parties, as of the date hereof, has made several loans to BAA in the amount of USD$4,168,268.01 (four million one hundred and sixty-eight thousand two hundred sixty-eight dollars 01/100) (the "Mashta/BAA Debts") and to Lera in the amount of USD$4,397,519.34 (four million three hundred ninety-seven thousand five hundred nineteen dollars 34/100) (the "Mashta/Lera Debts, together with the Mashta/BAA Debts shall be referred to as the "Mashta Debts" and the "Mashta Debts together with the Tricap Debts shall be herein referred to as the "Additional Obligations"), as more fully described on Exhibit "B". In such regard, Debtors hereby irrevocably and unconditionally accept and agree that in the event that Lera and BAA do not comply with the Additional Obligations by March 31st, 2023, Creditor, 530 Mashta and Debtors shall assume such Additional

PLAINTIFFS001794

Obligations on an equal basis (each, the "Acquired Obligations"); Debtors' Acquired Obligations are further described in Exhibit B hereto.

3. **Debt Payment Terms**. Debtors acknowledge and agree that the Total Debt and the Debtor's Acquired Obligation shall be paid in accordance with the following terms:

(a) The parties hereby agree that each loan made by the Creditor listed on **Exhibit "A"** shall bear interest from the initial date such loan was made until paid in full at the rate indicated in **Exhibit "A."**

(b) The parties hereby agree that each loan made by Creditor listed on Exhibit "B" shall bear interests from the initial date such loan was made until paid in full, at the rate set forth in Exhibit "B".

(c) Debtors shall pay Creditor, the outstanding principal amount of the Total Debt, as well as the Debtors Acquired Obligations, both plus all accrued and unpaid interest thereon, in full on or before March 31, 2023 (the "**Maturity Date**").

(d) All interest charged pursuant to this Agreement shall be based upon a 360-day year and the actual number of days elapsed.

(e) All amounts payable by Debtors with respect to the Total Debt and Debtors' Acquired Obligations shall be paid on or before the Maturity Date by wire transfer to the escrow account held with the Escrow Agent.

(f) All payments of principal, interest, fees and other amounts made or in respect to the Total Debt and Debtors' Acquired Obligations, shall be made without setoff or counterclaim and free and clear of and without deduction for any and all present and future taxes.

(g) Whenever the date of the payment of any amount of the Total Debt and Debtors' Acquired Obligations, is not a Business Day (as defined below), then such payment shall be made on the next Business Day. For purposes of this Agreement, "**Business Day**" shall mean any day (not Saturday, Sunday or legal public holidays in the United States of America), on which banks are open for business in Florida.

4. **Default.**

(a) In the event Debtors fail to pay the Creditor the Total Debt and the Debtors' Acquired Obligations on the Maturity Date, such event shall be considered an Event of Default under the Security Agreement and Creditor shall have the right to enforce any and all of its remedies under the Security Agreement.

(b)     Debtors hereby acknowledge and agree that any default under the Security Agreement and the Mashta Debt Acknowledgment, shall be deemed to be a default under this Agreement. Upon Debtors default under this Agreement and/or the Security Agreement and the Mashta Debt Acknowledgment, at Creditor's option, the new Secured Obligations listed in **Exhibit "A" and Exhibit "B"** attached hereto shall become immediately due and payable without notice or demand to Debtors or any other party obligated thereon, and Creditor shall have and may exercise any and all rights and remedies of a secured party under the Uniform Commercial Code as enacted in the applicable jurisdiction and as otherwise granted to Creditor under the Security Agreement and this Agreement. Debtors hereby waive, to the maximum extent permitted by law, notices of default, and all other notices, and in the event, any such notice cannot be waived, Debtors agree that if such notice is personally delivered, delivered via email or via overnight courier services to Debtors at the address shown on the Security Agreement, at least five (5) days prior to the exercise by Creditor of any of its rights or remedies, such notices shall be deemed to be reasonable and shall fully satisfy any requirement for giving notice.

(c)     The Debtors agree that all presently existing and hereafter acquired collateral in which Creditor and 530 Mashta have or shall have a security interest in, shall secure the payment and performance of all of Debtors' liabilities and obligations to Creditor and 530 Mashta of every kind and character, whether joint or several, direct or indirect, absolute or contingent, due or to become due, and whether under presently existing or hereafter, including the new Secured Obligations listed in Exhibit A and Exhibit B.

(d)     All rights granted to Creditor under this Section 3 shall be cumulative and not alternative, shall be in addition to and shall in no manner impair or affect Creditor's rights and remedies under this Agreement and the Security Agreement, statute or rule of law.

(e)     Upon the occurrence and during the continuation of an Event of Default (as defined in the Security Agreement), the Creditor may exercise any and all rights and remedies that the Creditor may have under this Agreement, the Security Agreement, the Uniform Commercial Code, or any other applicable law, under any applicable legislation.

**5. Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of Debtors, Creditor, and their respective successors, permitted assigns, trustees, and receivers.

**6. Notices.** Any notice or other communications to be provided under this Agreement shall be in writing and shall be sent via e-mail (without proof of receipt), reputable overnight delivery service, or certified, registered or regular mail to the Persons as the addresses described herein or such other address as such Persons may notify each other in writing from time to time.

PLAINTIFFS001796

    (a)    If to Debtors, to:    Robert Koffler
Maite, LLC
115 Blue Spruce Lane
Snowmass Village, CO, 8615

    (b)    If to Creditor, to:    Tri-Cap Holdings, LLC
1441 Brickell Ave, Suite 1210
Miami, FL, 33131
Attn: Gabriel Holschneider

**7. Expenses**. Debtors shall bear all legal expenses and fees incurred by the Parties in connection with the transactions contemplated hereby including the negotiation, documentation, and execution of this Agreement and the enforcement of the Creditor's rights hereunder and thereunder.

**8. Applicable Law.** This Agreement and any related documents shall be governed by the applicable laws of the State of Florida, United Sates of America. Creditor and Debtors consent and waive any objections to the jurisdiction and venue of the competent courts in Miami-Dade County, in the event of any litigation, and each Party hereto hereby expressly submits for itself and its property to the jurisdiction and venue of such courts.

**9. Amendment.** THIS AGREEMENT (i) AMENDS AND SUPERSEDES EACH AND EVERY PROMISSORY NOTE EXECUTED BY THE DEBTORS IN FAVOR OF THE CREDITORS AS IT RELATES TO THE TOTAL DEBT (THE "**ORIGINAL NOTES**") TO THE EXTENT THAT THIS AGREEMENT AND SUCH ORIGINAL NOTES DIFFER. DEBTORS ACKNOWLEDGE AND AGREE THAT TO THE EXTENT THAT THIS AGREEMENT AND SUCH ORIGINAL NOTES DIFFER, THE TOTAL DEBT AND DEBTORS' ACQUIRED OBLIGATIONS SHALL BE PAID IN ACCORDANCE WITH THE TERMS, COVENANTS AND CONDITIONS OF THIS AGREEMENT, AND NOT IN ACCORDANCE WITH THE TERMS, COVENANTS AND CONDITIONS OF THE ORIGINAL NOTES. IF THIS AGREEMENT AND THE ORIGINAL NOTES DIFFER OR CONFLICT IN ANY WAY WHATSOEVER, THE TERMS OF THIS AGREEMENT SHALL CONTROL.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the Effective Date.

**CREDITOR:**

**TRI-CAP HOLDINGS, LLC**, a South Dakota limited liability company

_____
By: Gonzalo Garcia
Tittle: Authorized Agent

**530 MASHTA, LLC**, a Florida limited liability company

_____
By: Camilo Montaña
Title: Manager

**DEBTORS:**

**MAITE, LLC**, a Florida limited liability company

_____
By: Robert Koffler
Title: Manager

**ROBERT M. KOFFLER**

_____
Robert Koffler, individually

# EXHIBT "A"

## TOTAL DEBT

| Concept | Date | Amount | Interest Rate | Interest | Description |
|---|---|---|---|---|---|
| Loans to RK | 01/23/17 | $ 2,500,000.00 | 8.50% | $ 1,225,416.67 | Loan To Maite LLC for LIT Capitalization |
| | 07/28/17 | $ 150,000.00 | 8.50% | $ 66,937.50 | |
| | 08/28/17 | $ 510,000.00 | 8.50% | $ 223,854.58 | Loan Transfered for LIT Capitalization |
| | 08/28/17 | $ 510,000.00 | 8.50% | $ 223,854.58 | Loan Transfered for LIT Capitalization |
| | 10/13/17 | $ 250,000.00 | 8.50% | $ 107,017.36 | Loan Transfered for LIT Capitalization |
| | 11/21/17 | $ 169,088.13 | 8.50% | $ 70,824.44 | Loan Transfered for LIT Capitalization |
| | 02/25/18 | $ 68,178.52 | 8.50% | $ 27,011.95 | Loan Transfered for LIT Capitalization |
| | 12/23/19 | $ 220,000.00 | 8.50% | $ 52,567.78 | |
| | 11/23/20 | $ 10,000.00 | 8.50% | $ 1,596.11 | Loan from Rainmaker |
| | 12/01/20 | $ 33,333.33 | 8.50% | $ 5,257.41 | Loan to RK (Ricardo Ulloa) |
| | 12/01/20 | $ 166,666.67 | 8.50% | $ 26,287.04 | Loan to RK (Alfredo Aramburo) |
| | 12/01/20 | $ 83,333.33 | 8.50% | $ 13,143.52 | Loan to RK (Bernardo Vogel) |
| | 03/03/21 | $ 10,000.00 | 8.50% | $ 1,360.00 | Loan From Rainmaker International |
| | 03/03/21 | $ 30,000.00 | 8.50% | $ 4,080.00 | Loan From Rainmaker International |
| | 06/28/21 | $ 30,000.00 | 8.50% | $ 3,251.25 | Loan From Mountain Top - Crisoforo Lozano |
| | 08/13/21 | $ 30,295.06 | 8.50% | $ 2,954.19 | Legal fees paid obo RK (Rainmaker Intl) |
| | 07/20/22 | $ 2,000,000.00 | 8.50% | $ 34,000.00 | LIT Repayment XS Global & Belho - Settlement Lawsuit |
| | 08/11/22 | $ 10,000.00 | 8.50% | $ 118.06 | Loan to RK from GHO personally |
| | 08/19/22 | $ 5,000.00 | 8.50% | $ 49.58 | Loan to RK from GHO personally |
| | 09/08/22 | $ 30,000.00 | 8.50% | $ 155.83 | Loan from Financial Mechanichs - House Payment |
| | 09/29/22 | $ 32,000.00 | 8.50% | $ 7.56 | Loan from Dinamo Holding Trust - House Payment |
| | Total | $ 6,847,895.04 | | $ 2,089,745.41 | |

PLAINTIFFS001799

# EXHIBIT B

## "DEBTORS' ACQUIRED OBLIGATONS"

| Concept | Date | Amount | Interes (%) | Interest Rate | Description |
|---|---|---|---|---|---|
| BAA | 01/31/18 | $ 115,000.00 | 8.50% | $ 46,241.18 | Girado por Financial Mechanics |
| | 03/28/18 | $ 68,869.32 | 8.50% | $ 26,781.56 | Girado por Financial Mechanics |
| | 04/10/18 | $ 12,891.38 | 8.50% | $ 4,973.57 | Girado por GHO - Directo a BAA |
| | 04/25/18 | $ 13,000.00 | 8.50% | $ 4,969.43 | Girado por Financial Mechanics |
| | 04/30/18 | $ 13,000.00 | 8.50% | $ 4,954.08 | Girado por Rainmaker |
| | 05/02/18 | $ 13,000.00 | 8.50% | $ 4,947.94 | Girado por Financial Mechanics |
| | 05/07/18 | $ 1,181.25 | 8.50% | $ 448.20 | Girado por Rainmaker |
| | 05/23/18 | $ 10,000.00 | 8.50% | $ 3,756.53 | Girado por Rainmaker |
| | 05/29/18 | $ 10,000.00 | 8.50% | $ 3,742.36 | Girado por Financial Mechanics |
| | 06/05/18 | $ 189.00 | 8.50% | $ 70.42 | Girado por Rainmaker |
| | 07/10/18 | $ 12,416.00 | 8.50% | $ 4,523.39 | Girado por Rainmaker |
| | 07/19/18 | $ 40,000.00 | 8.50% | $ 14,487.78 | Girado por Financial Mechanics |
| | 07/26/18 | $ 40,000.00 | 8.50% | $ 14,421.67 | Girado por Financial Mechanics |
| | 08/03/18 | $ 12,416.00 | 8.50% | $ 4,453.03 | Girado por Rainmaker |
| | 09/19/18 | $ 12,450.00 | 8.50% | $ 4,327.07 | Girado por Rainmaker |
| | 06/15/20 | $ 6,000.00 | 8.50% | $ 1,185.75 | Tricap Paid JPM Escrow Fee & Acct Funding |
| | Total | $ 380,412.95 | 8.50%% | $ 144,283.96 | This Additional Obligations shall be paid on an equal basis among Tricap Mashta and RK/Maite |
| | 1/3 | $ 126,804.32 | 8.5%% | $ 48,094.65 | Debtors Acquired Obligations |

| Concept | Date | Amount | Interest Rate (%) | Interest ($) | Description |
|---|---|---|---|---|---|
| LIT | 03/14/18 | $ 6,473.25 | 8.50% | $ 2,538.68 | Loan from GHO - Directly |
| | 04/05/18 | $ 12,187.35 | 8.50% | $ 4,716.34 | Loan from Rainmaker |
| | 05/07/18 | $ 4,280.85 | 8.50% | $ 1,624.29 | Pricnipal Piad, interest pending |
| | 06/05/18 | $ 619.00 | 8.50% | $ 230.63 | Principal Paid, Interest Pending |
| | 08/06/20 | $ 275,407.40 | 8.50% | $ 51,046.00 | Loan from Thor Equity Trust |
| | 08/06/20 | $ 275,407.40 | 8.50% | $ 51,046.00 | Loan from Dinamo Holding Trust |
| | 08/28/20 | $ 275,000.00 | 8.50% | $ 49,542.01 | Loan from Rainmaker International |
| | 11/27/20 | $ 200,000.00 | 8.50% | $ 31,733.33 | Loan from Belho for $700K. $500K transferred to Tricap |
| | 07/29/21 | $ 100,000.00 | 8.50% | $ 10,105.56 | Loan from GHO - Personally |
| | 08/03/21 | $ 1,700,000.00 | 8.50% | $ - | Loan from Eureka. Interest Paid Monthly |
| | 08/13/21 | $ 1,500,000.00 | 8.50% | $ - | Loan from Eureka. Interest Paid Monthly |
| | 09/01/21 | $ 500,000.00 | 8.50% | $ 46,513.89 | Loan from Thor Equity Trust |
| | 04/14/22 | $ 345,000.00 | 8.50% | $ 13,766.46 | Loan from Dinamo Holding Trust |
| | 07/20/22 | $ 150,000.00 | 8.50% | $ 2,550.00 | Balance of $400K Loan. Int paid through 7-20-22 |
| | Total | $ 5,344,375.25 | | $ 265,413.18 | This Additional Obligations shall be paid on an equal basi among Tricap Mashta and RK/Maite |
| | 1/3 | $ 1,781,458.42 | | $ 88,471.06 | Debtors Acquired Obligations |