UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22563-CIV-ALTONAGA/Reid

**REINSURANCE PARTNERS,
INVESTMENTS**, *et al.*,

    Plaintiffs,

v.

**MAITE LLC**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Plaintiffs, Tri-Cap Holdings, LLC ("Tri-Cap"), 530 Mashta, LLC ("Mashta"), and Reinsurance Partners Investments, LLC's ("RPI['s]") Motion for Final Summary Judgment [ECF No. 68], filed together with a Statement of Undisputed Facts ("Pls.' SOF") [ECF No. 67] on February 24, 2025. On March 25, 2025, Defendants, Maite, LLC ("Maite"), Robert M. Koffler, and RMK Ngena, LLC ("RMK") filed a Response [ECF No. 73] along with a Response to Plaintiffs' Statement of Material Facts and Additional Material Facts ("Defs.' Resp. SOF") [ECF No. 74]. Plaintiffs thereafter filed a Reply [ECF No. 83] and a Reply Statement of Material Facts [ECF No. 82]. The Court has carefully considered the record, the parties' written submissions, and applicable law.

### I. BACKGROUND

This case arises from a tortured business relationship and a subsequent dispute over debts, documented by promissory notes, a debt acknowledgement, and a later forbearance agreement. (*See generally* Pls.' SOF; Defs.' Resp. SOF).[1] The parties agree the debts exist, but the consensus

---

[1] All parties agree the various debt agreements are governed by Florida law. (*See* Mot. 5–6 (citing Florida law in the context of contract interpretation); *see also* Resp. 10–11, 21 (same)).

largely ends there. (*See* Pls.' SOF ¶¶ 16–22, 30–36, 42; Defs.' Resp. SOF ¶¶ 16–22, 30–36, 42). Plaintiffs assert the debts are past due. (*See* Pls.' SOF ¶¶ 23, 28–29, 38, 50, 56, 62–63, 68, 75). Defendants — the debtors — counter that a recent oral agreement reaffirmed the parties' long-held understanding that repayment of the debts is not yet due. (*See* Defs.' Resp. SOF ¶¶ 23, 28–29, 38, 50, 56, 62–63, 68, 148). Even if they are due, Defendants insist the obligations have been extinguished by subsequent financial transfers between the parties. (*See id.* ¶¶ 75, 77–78, 106, 171).

An October 2023 phone call and its aftermath lie at the center of this controversy. Nearly every aspect of the call is disputed — including who participated, the participants' authority to bind their respective entities, the purpose of the call, and what the participants discussed. (*Compare* Pls.' SOF ¶¶ 88–97, 99, 102–03 *with* Defs.' Resp. SOF ¶¶ 88–97, 99, 102–03; *see also id.* ¶¶ 162, 170–71; Pls.' Reply SOF ¶¶ 162, 170–71). Nevertheless, the parties agree that after the October 2023 call and a subsequent call between Defendant Maite and Plaintiff Mashta's principals, the parties engaged in two financial transfers (collectively, "the El Gran Pote Assignment"). (*See* Pls.' SOF ¶¶ 99, 138; Defs.' Resp. SOF ¶¶ 99, 138 (both disputed on other grounds)).

Specifically, under the Assignment, Defendant Maite first transferred its shares in Lera Investment Technologies, Inc. ("LIT") — a financial-technology company jointly owned by executives of Maite, Mashta, and Tri-Cap — to an entity called El Gran Pote LLC. (*See* Pls.' SOF ¶¶ 99, 138; Defs.' Resp. SOF ¶¶ 99, 138 (both disputed on other grounds); *see also* Resp. 2). Then, Maite allocated its membership interest in El Gran Pote to Mashta.[2] (*See* Pls.' SOF ¶¶ 99; Defs.'

---

[2] The El Gran Pote Assignment was executed in November 2023 and re-executed in February 2024. (*See* Pls.' SOF ¶¶ 100, 103–07, 141 (referencing the November 2023 and February 2024 Assignments); Defs.' Resp. SOF ¶¶ 100, 103–07, 141 (all disputed on other grounds); *see also* Pls.' SOF, Ex. E-14, Feb. 2024 El Gran Pote Assignment of Interest [ECF No. 67-28])).

Resp. SOF ¶ 99 (disputing the call notes but not the transfer details)). The transactions related to El Gran Pote are governed by an Amended Operating Agreement for El Gran Pote LLC (*see generally* Pls.' SOF, Ex. 26, Am. and Restated Operating Agreement ("El Gran Pote OA" or "Operating Agreement") [ECF No. 67-26]).

According to Defendants, the October call participants agreed to the El Gran Pote Assignment with the understanding that it would benefit Mashta's principal — allowing him to temporarily boost his assets to prevent a bank from foreclosing on his home. (*See* Defs.' Resp. SOF ¶¶ 86, 88, 92, 103, 106, 137). Defendants maintain that Mashta agreed to unwind the El Gran Pote Assignment once that purpose was achieved — a commitment allegedly reaffirmed during a follow-up call in November 2023. (*See id.* ¶¶ 86, 88, 103, 106, 137–38, 163–66). Defendants further contend the transferred shares exceed the value of Defendants' debts to all parties (*see id.* ¶¶ 134, 171), and that Mashta has refused to unwind the assignment as promised; therefore, Defendants conclude, their debts have been paid (*see id.* ¶¶ 23, 38, 75, 77–78, 137). Notably, Defendants also assert that the October call resulted in an oral agreement that extended the debt-repayment period by three years, consistent with the parties' long-held understanding that repayment would occur concurrently with the success of their joint business venture. (*See id.* ¶¶ 23, 38, 56, 124, 148).

Plaintiffs insist the value of the transferred shares is less than the total amount of Defendants' debts (*see, e.g.*, Pls.' SOF ¶ 134), and that the participants to the October call intended the El Gran Pote Assignment to serve as a means of helping Defendants partially satisfy their debts to Mashta with minimal tax consequences (*see id.* ¶¶ 56, 75–77, 92–93, 103; *see also* Pls.' Reply SOF ¶¶ 77, 79, 87). The parties implemented the El Gran Pote Assignment, Plaintiffs assert, in place of Mashta exercising its stock power rights following Defendants' default on the debts,

3

thereby avoiding an action that would have caused massive tax consequences for Defendants. (*See* Pls.' SOF ¶¶ 86–88, 99, 101, 108). Plaintiffs further deny that the October call resulted in an oral agreement to extend the due dates of Defendants' debt obligations. (*See id.* ¶¶ 75–77, 122–23).

In their Complaints,[3] Plaintiffs bring 13 claims for relief against Defendants, asserting theories of breach of contract, money lent, unjust enrichment, promissory estoppel, and account stated. (*See* RPI's Compl.); *Tri-Cap Holdings, LLC v. Koffler*, No. 24-cv-22865, Tri-Cap & Mashta's Compl. [ECF No. 1], filed July 26, 2024 (S.D Fla. 2024). Defendants raise 16 affirmative defenses, and Maite raises two counterclaims against Mashta: one for rescission of the November 2023 El Gran Pote Assignment,[4] and another for breach of the El Gran Pote Operating Agreement. (*See* Defs.' Answer to RPI's Compl. [ECF No. 29]; Defs.' Am. Answer to Tri-Cap & Mashta's Compl. [ECF No. 43]; *see also* Maite's Am. Counterclaim [ECF No. 38]).

Plaintiffs collectively move for summary judgment on their claims and Defendants' affirmative defenses, and Mashta seeks summary judgment on Maite's two counterclaims against it. (*See* Mot. 3).[5] Defendants, unsurprisingly, oppose summary judgment, pointing to the "many material facts in dispute[.]" (Resp. 6 (alteration added)).

---

[3] The Court consolidated case number 24-cv-22865 and this earlier case on September 6, 2024, because the two cases contain "overlapping facts, legal questions, witnesses, and evidence." (Sept. 6, 2024 Order [ECF No. 28] 2). As a result, there are two operative complaints, as well as an Amended Counterclaim: RPI's Complaint [ECF No. 1]; Tri-Cap and Mashta's Complaint, *see Tri-Cap Holdings, LLC v. Koffler*, No. 24-cv-22865, Complaint [ECF No. 1], filed July 26, 2024 (S.D Fla. 2024); and Maite's Amended Counterclaim [ECF No. 38]. The consolidation also led to multiple responsive pleadings: Defendants' Answer to RPI's Complaint [ECF No. 29]; Defendants' Amended Answer to Tri-Cap and Mashta's Complaint [ECF No. 43].

[4] In their Response, Defendants state that Koffler merely forgot about the existence of the February 2024 iteration of the signed agreement memorializing the El Gran Pote Assignment when he requested rescission of only the November 2023 Assignment. (*See* Resp. 33–34).

[5] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

## II.  LEGAL STANDARD

Summary judgment may be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. Rs. Civ. P. 56(a), (c).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party.  *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court draws all reasonable inferences in favor of Defendants, the parties opposing summary judgment.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

## III. DISCUSSION

**A.  Plaintiffs' Claims and Defendants' Affirmative Defenses**

The Court first addresses Plaintiffs' arguments in support of their request for summary judgment on their claims and several of Defendants' affirmative defenses.

The parties' briefing confirms there are indeed disputed material facts as to both the claims and the defenses.  (*See generally* Pls.' SOF; Defs.' Resp. SOF).  In particular, the parties dispute whether an oral agreement existed that modified or served as a novation to the existing debt agreements and whether the parties agreed that the El Gran Pote Assignment would be permanent. (*See generally* Pls.' SOF; Defs.' Resp. SOF); *see also St. Joe Corp. v. McIver*, 875 So. 2d 375, 382 (Fla. 2004) ("Whether the parties have validly modified a contract is usually a question of fact." (citations omitted)); *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 328 F. Supp. 2d 1319, 1332 (S.D. Fla. 2004) ("Whether the parties intended to create a novation is ordinarily a question of fact." (citation omitted)).

Because an oral modification or novation would serve as a defense to each of Plaintiffs' claims, the parties' factual dispute about whether modification or novation occurred precludes summary judgment on these claims. The same holds true for Defendants' affirmative defenses of equitable estoppel, promissory estoppel, payment and set off, and accord and satisfaction. (*See* Defs.' Answer to RPI's Compl. ¶¶ 42–44; *see also* Defs.' Am. Answer to Tri-Cap & Mashta's Compl. ¶¶ 43–51). Plaintiffs' challenges to these defenses turn on factual disputes surrounding the alleged oral agreement and the subsequent El Gran Pote Assignment. (*See* Mot. 20–25; *see also* Resp. 25–30).[6] Until those facts are resolved, summary judgment on these defenses is inappropriate. *See Cornelius v. Rollins Ranches, LLC*, No. 20-14464-Civ, 2022 WL 19300307, at *5 (S.D. Fla. Mar. 7, 2022).

Plaintiffs also argue that summary judgment is warranted, even in the face of factual disputes, on several legal grounds — (1) that the alleged oral agreement lacks consideration and essential terms; (2) that it violates the statute of frauds; and (3) Defendants' counterclaims premised on the alleged oral agreement are barred by Florida's banking statute of frauds. (*See* Mot. 18–20). These arguments do not persuade.

To start, Plaintiffs' first challenge is premature. Because the very existence of any oral agreement remains unresolved and even its alleged terms are disputed by the parties, the Court will not address the specifics of those terms. The same holds true for the statute-of-frauds defense. Plaintiffs argue the agreement must be in writing because it purportedly extends repayment by three years. (*See id.* 19–20). But whether the parties orally modified the contract, and the specifics

---

[6] The parties vehemently contest the values of Maite's LIT shares transferred into the El Gran Pote Assignment — as well as the admissibility of the valuation evidence each side cites in its briefings. (*See, e.g.*, Resp. 27–30; Reply 12–15). Because other factual disputes preclude summary judgment, the undersigned makes no determination regarding the admissibility of the cited evidence.

of that modification, are factual questions that belong to the trier of fact. *See also K3 Enters., Inc. v. Sasowski*, No. 20-24441-Civ, 2022 WL 3154178, at *7 (S.D. Fla. Aug. 7, 2022) ("[T]he statute of frauds may be satisfied based on how the factfinder resolves the numerous genuine issues of material fact surrounding the [agreement] (e.g., whether an enforceable contract was created and, if so, what terms were included therein)." (alterations added; citations omitted)). Moreover, Plaintiffs are reminded that they can successfully invoke the statute of frauds only if the contract *could not have been performed within a year*. *See Gatti as Tr. of Twin Palms, Inc. v. Goodman*, 780 F. App'x 808, 811 (11th Cir. 2019) (citing Fla. Stat. § 725.01; footnote call number omitted).

Plaintiffs also argue that the Court should grant them summary judgment on Defendants' affirmative defenses rooted in the alleged oral modification or novation based on the banking statute of frauds, Section 687.0304(2), which prohibits actions based on unwritten credit agreements. (*See* Mot. 20 (citing Fla. Stat. § 687.0304(2) ("A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."))). This argument overlooks a critical distinction: while the statute bars actions on oral credit agreements, Florida courts have long held it does not preclude debtors from asserting affirmative defenses based on such agreements. *See Maynard v. Cent. Nat'l Bank*, 640 So. 2d 1212, 1213–14 (Fla. 5th DCA 1994) (recognizing a range of oral-agreement-based defenses). Plaintiffs cite no authority to the contrary. (*See* Mot. 20).

### B. Remaining Affirmative Defenses

Plaintiffs also seek summary judgment on several of Defendants' affirmative defenses based on purely legal grounds, untethered from the underlying factual issues. *See, e.g.*, *Scott v. Paychex Ins. Agency, Inc.*, No. 22-62052-Civ, 2023 WL 5036099, at *8, 10, 11 (S.D. Fla. Aug. 8,

7

2023) (denying summary judgment on plaintiff's claims, while granting summary judgment for plaintiff on certain affirmative defenses).

***Failure to Reestablish Note and Provide Adequate Assurance.*** As Plaintiffs observe in their Reply, Defendants have abandoned the "Failure to Reestablish Note and Provide Adequate Assurance" affirmative defenses by failing to defend against Plaintiff's arguments in their Response. (*See* Reply 15–16; Resp. 11–31; Mot. 25–26; *see also* Defs.' Answer to Tri-Cap & Mashta's Compl. 40; *see id.* ¶¶ 53–54 (Affirmative Defense number 9); Defs.' Answer to RPI's Compl. ¶¶ 47–48 (Affirmative Defense number 7)). Failure to address an argument in response to a motion for summary judgment constitutes abandonment and justifies judgment as a matter of law. *See Perez v. City of Opa-Locka*, No. 22-20748-Civ, 2023 WL 6121896, at *5 (S.D. Fla. Sept. 19, 2023) (citations omitted). Therefore, the Court grants summary judgment for Plaintiffs as to Defendants' Affirmative Defense 9 against Tri-Cap and Mashta and Defendants' Affirmative Defense 7 against RPI. (*See* Defs.' Answer to Tri-Cap & Mashta's Compl. ¶¶ 53–54; *see also* Defs.' Answer to RPI's Compl. ¶¶ 47–48).

***No Cause of Action for Promissory Estoppel and Unjust Enrichment.*** Next, Plaintiffs seek summary judgment on what Defendants characterize as an "affirmative defense": namely, that Plaintiffs may not simultaneously assert equitable claims alongside breach-of-contract claims where an express contract governs the same subject matter. (*See* Defs.' Answer to Tri-Cap & Mashta's Compl. ¶ 52 (asserted as Affirmative Defense number 8); Defs.' Answer to RPI's Compl. ¶ 46 (asserted as Affirmative Defense number 6); *see also* Resp. 10–11 (citing *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1292 (S.D. Fla. 2021))). Not so. As Plaintiffs explain, they may plead these equitable claims in the alternative to their breach-of-contract claims so long as they do not seek duplicative damages — which they explicitly disclaim in their Motion. (*See*

Mot. 10–14, 25); *see also Am. Choice Healthcare LLC v. Coverys Specialty Ins. Co.*, No. 24-22324-Civ, 2024 WL 5165877, at *3 (S.D. Fla. Dec. 19, 2024) (citations omitted); *cf. Quisqueya Cargo Shipping Corp. v. Caribpro VI Imports, LLC*, No. 11-24656-Civ, 2013 WL 4525426, at *4 (S.D. Fla. Aug. 26, 2013).

Regardless, this so-called affirmative defense is not an affirmative defense at all. "[A] defense that simply points out a defect . . . in the plaintiff's case is not an affirmative defense." *Bettor v. Penn Credit Corp.*, No. 18-60719-Civ, 2018 WL 6574726, at *2 (S.D. Fla. Jun 18, 2018) (alterations added; citations omitted); *see also Scott*, 2023 WL 5036099, at *8 (declining to grant summary judgment on affirmative defenses that merely pointed out a defect within the complaint).

### C. Counterclaims[7]

Finally, Mashta moves for summary judgment on Maite's two counterclaims against it. (*See* Mot. 3, 26–34).

#### *Counterclaim 1: Rescission of the El Gran Pote Assignment (Maite against Mashta)*

In its first counterclaim, Maite seeks rescission of the El Gran Pote Assignment, alleging that Mashta falsely represented it intended to unwind the Assignment — thus fraudulently inducing Maite to agree to the transaction. (*See* Maite's Am. Counterclaim ¶¶ 49–65).

Mashta argues that the alleged false representation was merely a promise to perform a future action, which cannot support a fraud-based claim. (*See* Mot. 27–28 (citing *Talisman Cap. Alt. Invs. Fund, Ltd. v. Mouttet*, No. 10-24577-Civ, 2012 WL 13012424, at * 8 (S.D. Fla. Feb. 16,

---

[7] Maite seemingly attempts to embed a request for summary judgment on its two counterclaims in its Response. (*See* Resp. 31 ("Counter-Plaintiff Maite seeks summary judgment against Counter-Defendant Mashta as to the two claims made against it . . . . (alteration added))). If Maite intended to move for summary judgment, it did not do so. The Court does not interpret this single line in the Response, unaccompanied by a separate motion or statement of facts, as a cross-motion for summary judgment. *See* S.D. Fla. L. R. 56.1.

9

2012) (other citations omitted))). Yet, Florida law recognizes an exception where the promise is made with no intent to perform. (*See* Resp. 32 (citing *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001) (other citations omitted))). That, Maite contends, is precisely what happened here. (*See* Resp. 5).

The evidence Maite presents — albeit limited — is minimally sufficient for a factfinder to conclude Mashta did not intend to honor its promise. (*See*, *e.g.*, Koffler Decl. ¶ 27; Defs.' Resp. SOF, Ex. 10, June 11, 2024 Email [ECF No. 74] 347 (recounting a comment from a Tri-Cap executive that Maite contends indicates collusion between Maite and Tri-Cap's executive)). As with other courts confronting "issues of intent or state of mind" related to fraud claims, the Court concludes Mashta's intent is not suitable for resolution by summary judgment. *In re Lee*, 450 B.R. 231, 234 (Bankr. N.D. Ga. 2011).

Mashta's remaining arguments fare no better. Whether Maite received a benefit it cannot return, or ratified the transaction through later conduct, are disputed issues of fact. (*See* Mot. 28–30; *see also* Resp. 32–34). Mashta argues Maite's rescission counterclaim fails because it would be impossible for Maite to return the benefit it received from the El Gran Pote Assignment (*see* Mot. 28) — but as explained, whether Maite benefited from the assignment turns on the parties' highly disputed accounts of the October 2023 call and the purpose behind the Assignment. Mashta also contends Koffler ratified the El Gran Pote Assignment because he re-executed it in February 2024 (*see id.*) — yet ratification is only effective if done unequivocally and intelligently, *see Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1354 (S.D. Fla. 2015) (citations omitted). Mashta's citations to Koffler's deposition do not clarify Koffler's state of mind in re-executing the Assignment. (*See* Mot. 28 (citing Pls.' SOF ¶¶ 106–07, 140–41 (citing Koffler Dep. 183:1–19))). Finally, Mashta argues Maite could not reasonably rely on its representative's

statements about unwinding the El Gran Pote Assignment (*see id.* 28–29); given the myriad disputes regarding the basic facts of this case, this argument, too, must await resolution at trial.

### *Claim 2: Breach of the El Gran Pote Operating Agreement (Maite against Mashta)*

In its second counterclaim, Maite alleges that Mashta breached the El Gran Pote Operating Agreement — arguing that the El Gran Pote Assignment functioned as a "dissociation" of Maite from the El Gran Pote membership. (*See* Maite's Am. Counterclaim ¶¶ 66–74 (citing El Gran Pote OA ¶¶ 30–31, 38–39); *see also* Defs.' Resp. SOF ¶ 141). Dissociation, Maite argues, requires payment of fair market value under the terms of the Operating Agreement. (*See* Maite's Am. Counterclaim ¶¶ 66–74 (citing El Gran Pote OA ¶¶ 30–31, 38–39)). Mashta sees it differently, arguing that no such "dissociation" occurred; instead, according to Mashta, the parties completed a member-to-member transfer which the Operating Agreement allows without implicating provisions that require fair market value payment. (*See* Mot. 30–33 (citing El Gran Pote OA ¶¶ 37, 39 (other citations omitted)); *see also* Pls.' SOF ¶ 141).

Given the unresolved factual disputes surrounding the October call and the resulting El Gran Pote Assignment, the Operating Agreement's "dissociation" and "transfer" provisions are ambiguous as applied to the movement of shares and interests from Maite to Mashta. (*See* El Gran Pote OA ¶¶ 30–33, 37–39; Pls.' SOF ¶ 141; Defs.' Resp. SOF ¶ 141). And "[w]here a latent ambiguity exists, the issue of the correct interpretation of the agreement becomes an issue of fact which precludes summary judgment." *C R Mall, Inc. v. Sears, Roebuck &Co.*, 667 So. 2d 1016, 1018 (Fla. 5th DCA 1996) (alteration added; citation omitted).

Finally, Mashta argues that the Operating Agreement's limitation-of-liability clause bars this counterclaim. (*See* Mot. 33–34 (citing El Gran Pote OA ¶ 65)). This argument fails at the threshold: the clause does not protect members from liability for "intentional wrongdoing" (El

11

Gran Pote OA ¶ 65), and Maite's counterclaim puts forth circumstantial evidence indicating intentional wrongdoing by Mashta (*see, e.g.*, Koffler Decl. ¶ 27; June 11, 2024 Email 347). Whether Mashta's executive knowingly misled Maite remains a factual question.

In short, Maite's counterclaim for breach of the El Gran Pote Operating Agreement proceeds to trial.

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs, Tri-Cap Holdings, LLC, 530 Mashta, LLC and Reinsurance Partners Investments, LLC's Motion for Final Summary Judgment **[ECF No. 68]** is **DENIED in part and GRANTED in part**. Summary judgment is granted in favor of Plaintiffs as to Defendants' Affirmative Defense 9 against Tri-Cap and Mashta and Defendants' Affirmative Defense 7 against RPI only.

**DONE AND ORDERED** in Miami, Florida, this 5th day of May, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record